**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 0:21-cv-60324-JEM/Becerra

JESSE LEWIS,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

### REPORT AND RECOMMENDATION[1] ON MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

**THIS CAUSE** came before the Court upon Jesse Lewis's ("Movant" or "Lewis") Motion to Vacate Pursuant to 28 U.S.C. § 2255 and Memorandum of Law in Support (the "Motion"). ECF No. [1]. Lewis requests that the Court vacate his conviction in his underlying criminal case.[2] *Id.* The United States of America (the "Government") responded to the Motion (the "Response"), ECF No. [5], and Lewis filed his Reply, ECF No. [7]. The Court held an evidentiary hearing, ECF Nos. [29], [32], and the Motion is now ripe for disposition. After careful review of the Motion, the relevant authorities, the record, and for the reasons discussed below, it is hereby **RECOMMENDED** that the Motion be **DENIED**.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [9].

[2] All citations to "Criminal ECF" refer to the docket in Lewis' underlying criminal case in the Southern District of Florida, *United States v. Lewis*, No. 1:14-cr-60080-JEM.

## I.      BACKGROUND

On July 18, 2013, a criminal Complaint was filed against Lewis in the United States District Court for the Southern District of Florida for sex trafficking in violation of Title 18, United States Code, Section 1591(a)(1) (the "Criminal Case").  Criminal ECF No. [1].  Lewis was arrested on April 2, 2014, and appeared before the Court for his initial appearance the following day.  Criminal ECF Nos. [9], [10].  At his initial appearance, the Court found Lewis to be indigent and appointed the Federal Public Defender's office to represent him.  Criminal ECF No. [9].  A detention hearing was also held, and the Court ordered that Lewis be detained pending trial.  Criminal ECF Nos. [13], [15].

On April 15, 2014, Lewis was indicted on two counts of sex trafficking by force in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1), and one count of brandishing a firearm in furtherance of a crime of violence in violation of Title 18, United States Code, Section 924(c)(1)(A) (the "Indictment").  Criminal ECF No. [16].  Lewis was arraigned on the Indictment on April 17, 2014, and entered a plea of not guilty.  Criminal ECF No. [20].

On May 28, 2014, Assistant Federal Public Defender R. D'Arsey Houlihan ("Pre-Trial Counsel" or "AFPD Houlihan") filed a Motion to Exclude Newly Discovered Evidence or in the Alternative for a Continuance.  Criminal ECF No. [27].  The Court denied the motion as to the exclusion of evidence but granted the motion as to the continuance requested.  Criminal ECF No. [30].  On June 26, 2014, AFPD Houlihan filed a Motion to Suppress Evidence, which was granted by the Court on July 15, 2014.  Criminal ECF Nos. [32], [40].

On July 14, 2014, AFPD Houlihan filed a Motion to Withdraw and Appoint Conflict-Free Counsel.  Criminal ECF No. [39].  In the Motion to Withdraw, AFPD Houlihan stated that Assistant United States Attorney Francis Viamontes ("AUSA Viamontes") called to alert him of a

potential conflict, namely, "that the government intended to call as a witness in Mr. Lewis's trial an individual who has previously been represented by the Federal Public Defender's Office in connection with a sex trafficking prosecution." *Id.* at 1–2. As such, the Federal Public Defender's Office had an imputed conflict and moved to withdraw from any further representation of Lewis in the Criminal Case. *Id.* at 3. The District Court granted AFPD Houlihan's Motion to Withdraw on July 15, 2014. Criminal ECF No. [41].

On July 18, 2014, the Court appointed CJA attorney Louis Casuso ("Trial Counsel" or "Mr. Casuso") as Lewis' new counsel through and including trial and sentencing in the Criminal Case. ECF No. [42]. The Parties appeared for a Calendar Call on July 24, 2014, and, upon an *ore tenus* motion by Mr. Casuso, the case was continued until September 8, 2014. Criminal ECF Nos. [43], [44].

The jury trial in the Criminal Case began on September 8, 2014, and lasted four days. Criminal ECF Nos. [71]–[74]. The jury found Lewis guilty on all counts—namely, Counts 1 and 2 for sex trafficking and Count 3 for brandishing a firearm in furtherance of a crime of violence. Criminal ECF No. [79]. Following the jury's verdict, Lewis, acting *pro se*, filed a Motion for New Trial, arguing that Mr. Casuso failed to impeach one of the Government's witnesses at trial. Criminal ECF No. [83]. Lewis additionally filed a *pro se* Motion for Status Hearing Re Counsel, requesting that the court appoint new counsel to represent him. Criminal ECF No. [85]. Both motions were denied. Criminal ECF No. [88].

Lewis appeared, represented by Mr. Casuso, for a Sentencing Hearing on December 8, 2014. Criminal ECF No. [106]. Lewis was sentenced to 360 months' imprisonment as to Counts 1 and 2, to run concurrently; 84 months' imprisonment as to Count 3, to run consecutively; supervised release for a period of life as to Counts 1 and 2; and supervised release for a period of

five years as to Count 3, to run concurrently; as well as a $300.00 special assessment. Criminal ECF No. [107].

Lewis, again acting *pro se*, filed a Notice of Appeal, notifying the Court that he intended to appeal the final judgment in the Criminal Case, as well as the Order denying his Motion for New Trial. Criminal ECF No. [108]. Mr. Casuso, who was still appointed to represent Lewis at the time, moved to withdraw as counsel for the appeal, as Lewis "perceive[d] he has a conflict" with Mr. Casuso. Criminal ECF No. [112]. Mr. Casuso's Motion to Withdraw was granted, and he was removed as counsel of record on December 23, 2014. Criminal ECF No. [117].

Lewis was appointed new counsel for the purposes of his appeal—which is not relevant to the instant action. The appeal ultimately resulted in his conviction on Count 3 being vacated, and his sentence revised to a total of 360 months' imprisonment on Counts 1 and 2, to run concurrently, and supervised release for a period of life as to Counts 1 and 2, as well as a $200.00 special assessment. Criminal ECF No. [162]. The instant Motion followed.

## II.    THE INSTANT MOTION

Lewis, acting *pro se*, filed the instant Motion seeking relief pursuant to 28 U.S.C. § 2255. *See* ECF No. [1]. In his Motion, Lewis argues that Pre-Trial Counsel, AFPD Houlihan, provided ineffective assistance in "fail[ing] to give competent advi[c]e as to whether to proceed to trial or plead guilty." *Id.* at 4. Specifically, Lewis contends:

> Prior to making the decision to proceed to trial, and prior to counsel, Attorney Raymond D'Arsey Houlihan III's replacement as trial counsel, Attorney Houlihan rendered ineffective advi[c]e as to whether Petitioner should accept the Government's plea offer, [and] failed to communicate the plea offer to trial counsel, Louis Casuso, which led to Petitioner's decision to proceed to trial. If the offer would have been communicated, Petitioner would have accepted its terms, and the sentence would have been less severe than the actual judgment imposed after trial.

*Id.*  Lewis requested that the Court "[g]rant an evidentiary hearing to determine and develop a record as to whether counsel rendered ineffective advi[c]e which led to Petitioner being forced to proceed to trial vs. [sic.] plead guilty." *Id.* at 12.

Lewis attached multiple exhibits to his Motion.  ECF No. [1-1].  Exhibit A consists of two letters written by Lewis to Trial Counsel, Mr. Casuso, asking about a "plea bargain that the government offered [him] for 10 years, when Mr. Houlihan was [his] attorney." *Id.* at 1–2.  The date on each letter in Exhibit A is redacted. *Id.*  Exhibit B is a letter written by Lewis to District Judge Jose E. Martinez, in which Lewis alleges that Mr. Casuso failed to review the Pre-Sentence Investigation Report with him, and that such failure is evidence of Mr. Casuso's ineffectiveness as counsel. *Id.* at 3–5.  Exhibit C consists of two orders from the underlying criminal case. *Id.* at 7–8.  The first is an Order Denying Defendant's Pro Se Motion for New Divergent Interest Counsel, Criminal ECF No. [92]. *Id.* at 7.  A drawing of a frowning face appears at the top of the order, and Lewis labeled the drawing, "Louis Casuso taunting me when the Judge denied this motion." *Id.* The second is the Order Denying as Moot Motion for Extension of Time to File a Response, Criminal ECF No. [93]. *Id.* at 8.  A drawing of a frowning face appears on the top of the second order as well. *Id.*  Exhibit D is a Motion for Substitution of Counsel, dated December 6, 2014, and signed by Lewis. *Id.* at 9–11.  Exhibit E is an Order Granting Defendant's Motion to Withdraw as Counsel, Criminal ECF No. [117], wherein Mr. Casuso was permitted to withdraw on December 23, 2014. *Id.* at 13–14.

Lewis also filed a Memorandum of Law in Support of his Motion.  ECF No. [1-2].  Therein, Lewis restates that the "sole issue presented is whether pre-trial counsel was ineffective when he failed to render competent advi[c]e as to whether Petitioner should accept a Government plea offer, and failed to communicate said plea offer to substitute trial counsel for Petitioner's consideration

as to whether it would be in Petitioner's best interest to plead guilty or proceed to trial." *Id.* at 1. Lewis argues that "[t]he prejudice is that had pre-trial counsel communicated the plea offer, there is a reasonable probability Petitioner would have accepted the plea offer, and would not have proceeded to trial." *Id.* at 2.  Lewis adds that his "'off-the-record' allegations between [himself] and pre-trial counsel are illuminated in his affidavit attached hereto, and therefore the record in this case can cast no real light on what happened between Petitioner and pre-trial counsel with respect to discussions about a plea offer by the Government." *Id.*  Finally, Lewis states that he "waives attorney-client privilege to allow pre-trial counsel and trial counsel to corroborate any out-of-court communication and discussions about the Government plea offer." *Id.*

Lewis also submitted an affidavit attesting that "[p]rior to trial, upon information and belief, pre-trial counsel Houlihan had informed [him] that the Government had made a plea offer, but due to the circumstances surrounding the events in [his] case, counsel did not properly communicate the terms and conditions of the plea, to wit: whether [Lewis] would have to waive [his] right to a trial by jury; whether [he] would have to waive [his] right to appeal the conviction, sentence, or any post-conviction proceedings under 28 U.S.C. 2255 or 2241; whether [he] would be required to make a 'proffer' statement; whether [he] would be eligible for the 'safety valve'; [and] whether the plea would be pursuant to Rule 11(c)(1)(A), (c)(1)(B), or (c)(1)(C); among other factors." ECF No. [1-3]  at 1.  Lewis attests that "upon information and belief, pre-trial counsel Houlihan DID NOT communicate with substitute trial counsel, Attorney Louis Casuso, that the Government had made a plea offer and the terms and conditions thereof," and "Trial counsel Casuso DID NOT communicate to [Lewis] that any plea offer had been communicated to him from pre-trial counsel Houlihan." *Id.* (emphasis in original).  Finally, Lewis attests that "if either pre-trial counsel Houlihan or trial counsel Casuso had communicated the plea offer, and properly

explained the terms and conditions of the plea, there is a reasonable probability [Lewis] would not [sic.] have entertained the plea offer and would have accepted the terms and conditions of the plea, and would not have proceeded to trial." *Id.*

The Government filed its Response in Opposition to the Motion (the "Response"). ECF No. [5]. As to whether AFPD Houlihan rendered defective performance, the Government argues that Lewis's claim is "conclusory and unsupported." *Id.* at 9. The Government categorizes Lewis's allegations as "entirely self-serving and incredible," and argues that the record reflects that AFPD Houlihan *did* relay a plea offer to Lewis and that Lewis rejected it. *Id.* The Government argues further that even if AFPD Houlihan did not relay the plea offer to Mr. Casuso, there was in fact no viable plea offer to relay at the time Mr. Casuso appeared in the case, as the same had been rejected by Lewis. *Id.* at 11.

As to prejudice, the Government argues that Lewis is unable to show that he would have accepted the plea offer had further details been conveyed. *Id.* at 9. The Government points to Lewis's testimony at the sentencing hearing in the Criminal Case, wherein Lewis maintained his innocence and testified, "I never forced anyone to do anything. I never coerced anyone to do anything. I was simply with these women. That's it. That's it." *Id.* at 9–10. The Government argues that Lewis's unwillingness to accept responsibility through and including sentencing further evidences that he would not have accepted responsibility by way of accepting the plea offer and entering a guilty plea. *Id.* at 10. The Government also adds that there would be no prejudice even if AFPD Houlihan failed to relay the plea offer to Mr. Casuso, as Lewis himself wrote multiple letters to Mr. Casuso advising him of the plea offer and inquiring about its viability. *Id.* at 11.

Finally, the Government addresses Lewis's assertion that Mr. Casuso was also ineffective in rendering assistance by failing to communicate with Lewis about the plea offer. *Id.* at 11–12.

While Lewis's Motion only directly challenges the performance of AFPD Houlihan, Lewis does include some allegations regarding Mr. Casuso.  *Id.*  The Government argues that Lewis failed to show that there was any viable plea offer for Mr. Casuso to have communicated to Lewis, and that even if so, Lewis cannot show that he would have accepted a ten-year plea offer when he rejected the previous offer with the same term of imprisonment.  *Id.* at 12.

The Government attached two exhibits to its Response.  ECF Nos. [5-1], [5-2].  The first is a recitation of the facts of the offenses under which Lewis was convicted in the Criminal Case.  ECF No. [5-1].  The second is an email chain between AUSA Viamontes and AFPD Houlihan, dated July 7, 2014 through July 10, 2014, regarding Lewis.  ECF No. [5-2].  In the final email, dated July 10, 2014, sent from AFPD Houlihan to AUSA Viamontes, it states, "Francis – I spoke to Mr. Lewis and he indicated that he was not willing to accept a plea offer of 10 years."  *Id.*

Lewis filed a brief Reply in Support of the Motion.  ECF No. [7].  Therein, Lewis argues that there is no requirement for him to respond to the arguments found in the Government's Response.  *Id.* at 1.  Additionally, Lewis reiterates his request for an evidentiary hearing on the Motion.  *Id.*

The District Court granted Lewis's request for an evidentiary hearing and referred the instant Motion to the undersigned with the direction that counsel be appointed for Lewis.  *See* ECF No. [9].  The undersigned appointed CJA Attorney Mauricio Aldazabal to represent Lewis in the instant action.  ECF Nos. [12], [16].  Both Lewis and the Government filed pre-trial narrative statements as instructed by the Court.  ECF Nos. [23], [24].  Lewis additionally filed a Motion Seeking His Legal Files, requesting the Court's "assistance" as he "has yet to receive his legal files and furthermore that he needed certain documents in his legal file in order to refer to them in his testimony at the upcoming hearing."  ECF No. [25].

## III.    THE EVIDENTIARY HEARING

The Court held an evidentiary hearing on May 2, 2023 (the "Evidentiary Hearing").  *See* ECF No. [29].  At the onset of the Evidentiary Hearing, the Court addressed Lewis's Motion Seeking His Legal Files, ECF No. [25].  With consent of the Parties, the Court bifurcated the Evidentiary Hearing, instructing the Government's witnesses to proceed first and Lewis to testify at a continued hearing to allow Lewis to review his unidentified "legal file" that had been requested.  *See* ECF No. [29] at 10.

### A.  Testimony of Assistant United States Attorney Francis Viamontes

The Government called two witnesses at the Evidentiary Hearing.  The first was AUSA Viamontes[3], the AUSA in the Criminal Case, who appeared by Zoom videoconference.  AUSA Viamontes testified that there was a "10-year [plea] offer which [she] relayed on July 10th of 2014," to AFPD Houlihan to relay to Lewis (the "Plea Offer").  *See* ECF No. [29] at 17:19–22. AUSA Viamontes testified that the mandatory minimum sentence faced by Lewis at the time the Plea Offer was made was a total of 22 years, but due to "witness issues," and, primarily, the victims' fear of testifying, she conveyed a lower offer to avoid trial.  *Id.* at 18:6–25.  AUSA Viamontes testified that AFPD Houlihan "sent [her] an email on July 10th, which is now in evidence, in 2014 at 11:30 a.m. saying: 'Francis, I spoke to Mr. Lewis, and he indicated that he will not – he was not willing to accept a plea offer of 10 years.  Signed, D'Arsey."  *Id.* at 25:6–10.

AUSA Viamontes testified that after Lewis rejected the Plea Offer, "luckily, the case got better," including her identification of a witness with the last name Eutsey, who was able to

---

[3] The Court notes that Francis Viamontes is now a Judge in the Circuit Court for the Seventeenth Judicial Circuit of Florida, and in all other instances would refer to her as "Judge Viamontes".  For clarity herein, however, this Report and Recommendation shall refer to Judge Viamontes as "AUSA Viamontes" to reflect her role in the Criminal Case and that her testimony in this case is in her former capacity.

corroborate other key testimony in the Criminal Case.  *Id.* at 19:3–4, 25:19–21.  Once Eutsey was identified, however, AFPD Houlihan "was forced to withdraw from the case because the Public Defender's Office had previously represented Mr. Eutsey."  *Id.* at 26:9–12.  AUSA Viamontes explained that Mr. Casuso was appointed as substitute counsel for Lewis, and when asked whether the Plea Offer was still viable at the time that Mr. Casuso was appointed, AUSA Viamontes responded, "No.  It would not have been viable after the email on July 10th."  *Id.* at 27:9–14.  AUSA Viamontes further testified that she had no recollection of relaying any plea offers to Mr. Casuso, and when asked whether there was "any possibility in [her] mid that [she] would have offered Mr. Casuso, or through Mr. Casuso, the 10-year deal to give to Mr. Lewis prior to trial," AUSA Viamontes responded "Absolutely not.  Absolutely not."  *Id.* at 33:4–8.

On cross-examination, AUSA Viamontes was asked about the terms of the Plea Offer.  AUSA Viamontes testified that "[t]he sticking point," for Lewis' refusal of the Plea Offer, "was, in [her] opinion, the amount of time," as she didn't "believe Mr. Lewis had ever served any significant amount of time prior to the case," and "[a]ll those other terms [i.e., the appellate waiver] would have followed, but [she didn't] think [they] ever got to that."  *Id.* at 35:11–17.  AUSA Viamontes further testified that "it wasn't until the case became difficult and Mr. Lewis wasn't accepting any reasonable offer, that [she], you know, went for [her] last-ditch effort of trying to cooperate Mr. Eutsey."  *Id.* at 37:22–38:1.

### B.  Testimony of Assistant Federal Public Defender R. D'Arsey Houlihan

Next, the Government called AFPD Houlihan as a witness.  *Id.* at 43.  Prior to the testimony of AFPD Houlihan, the Court advised Lewis that he had a right to the attorney-client privilege, and Lewis knowingly and voluntarily waived his attorney-client privilege to permit the testimony of AFPD Houlihan.  *Id.* at 40–42.  AFPD Houlihan first discussed an email exchange between

himself and another Assistant Federal Public Defender, Katie Carmon ("AFPD Carmon"), which took place on July 8, 2014. *Id.* at 46. AFPD Houlihan testified that he sent the following email to AFPD Carmon:

> I have to go to see Mr. Lewis tomorrow to explain what happened with the suppression motion. The government has also made him a revised plea offer which I have to convey. I don't think there is any possibility that he will take the offer, but I have to convey it to him. If either/both of you would like to come with me, I would certainly appreciate the company. I'm probably going to head over around 11:00, if you want to go, but 11:00 is no good, let me know. I'm pretty flexible tomorrow.

*Id.* at 46:15–47:3. AFPD Houlihan testified that AUSA Viamontes "said we will offer [Lewis] a cap of 10 years if he – if he is interested in taking the plea," and that they "were going to, you know, sort of hammer out the details if Mr. Lewis was interested or inclined to accept the offer." *Id.* at 47:14–24.

AFPD Houlihan testified that he did not recall the exact interaction with Lewis wherein he conveyed the Plea Offer, but that he recalled Lewis being "unreceptive to any sort of negotiations regarding a plea at any stage during the time that [AFPD Houlihan] represented him. He was very adamant about that." *Id.* at 49:10–12. AFPD Houlihan testified that he and Lewis spent "quite a bit of time together talking about the discovery, the facts of the case, [and their] defense." *Id.* at 29:20–23. Further, AFPD Houlihan testified that he communicated to Lewis what his exposure would be at trial if he did not accept a plea, what the evidence would show at trial, and what the sentencing experience would entail. *Id.* at 52:18–53:12. AFPD Houlihan testified that Lewis "felt that he was innocent," and maintained that he "did not force anybody to do anything," throughout the Criminal Case, which contributed to AFPD Houlihan's belief that Lewis was not receptive to the Plea Offer. *Id.* at 54:7–11. The Government asked AFPD Houlihan, "[i]n your career have you ever received an offer from the Government for a plea that you did not communicate to a client?" to which Attorney Houlihan responded "[n]o." *Id.* at 48:24–49:2.

As to Mr. Casuso, AFPD Houlihan testified that upon withdrawing from the Criminal Case he met with Mr. Casuso to review the facts and discovery.  *Id.* at 62:13–63:3.  AFPD Houlihan testified that he "would be surprised if [he] didn't mention the plea offer, but it's possible [he] didn't.  Because, you know, [] Mr. Lewis had rejected it." *Id.* at 63:1–3.

### C.  Testimony of Movant Jesse Lewis

The Evidentiary Hearing continued on June 8, 2023 for Lewis's testimony.  *See* ECF No. [32].   At the outset, Lewis stated that the legal file he was expecting had "mysteriously disappeared," but that he was ready to proceed with his testimony.  *Id.* at 4:5–19.  Lewis testified that he met with AFPD Houlihan "after the suppression hearing," to discuss the results of the hearing.  *Id.* at 10:18–19.  During that meeting, Lewis testified:

> And towards the end of the meeting, Mr. Houlihan was pretty much leaning out the door and he goes, 'Oh, by the way, the government offered you a 10-year plea, but you have to register as a sex offender.'  So I said, 'Ten-year plea.  Okay.  Why do I have to register as a sex offender when I don't have any minors in my case?' . . . He said, 'Yeah, you're right,' and he walked out the door.

*Id.* at 10:20–11:2.  When asked whether AFPD Houlihan discussed any specifics regarding the Plea Offer, Lewis responded:

> No, he didn't – he didn't let me know if it was a nonbinding, a binding plea.  He didn't let me know if I had to waive my appeal rights.  He didn't let me know that the government – that the judge can actually use relevant conduct.  So even if I got the ten years, the ten years would probably increase based off of relevant conduct. No.  He – none of this was mentioned.

*Id.* at 11:3–12.  Lewis testified that he did, however, recall AFPD Houlihan explaining the benefits and risks of going to trial as opposed to taking a plea offer, although Lewis was unsure when exactly that discussion took place.  *Id.* at 11:13–12:8.

When asked, hypothetically, whether Lewis would have accepted the Plea Offer if AFPD Houlihan "properly explained" its terms, Lewis testified:

> Absolutely.  I just wanted to understand the contents of this plea.  Like, I didn't understand why – now I do.  I didn't understand then why I had to register as a sex offender when I didn't have minors in my case; both victims were 25 and 26.  I don't have any minors on my case.  So, yeah, absolutely, I would have accepted the plea.

*Id.* at 16:18–17:2.

## IV.    ANALYSIS

Pursuant to Title 28, United States Code, Section 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  *Id.*

As to a claim for ineffective assistance of counsel, the Sixth Amendment gives criminal defendants the right to effective assistance of counsel.  U.S. Const., amend. VI.  A claim for ineffective assistance of counsel is subject to the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Specifically, *Strickland* requires that a criminal defendant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687–88).

As to the first prong, deficient performance is performance that falls "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  That is, actions that "no competent counsel would have taken[.]"  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing *Holladay v. Haley*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)).

However, in proving that counsel's actions were deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To that extent, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (footnote omitted) (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). The Supreme Court has articulated that one of the "basic duties" of criminal defense counsel is to "consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Defense counsel clearly have an obligation to keep a client informed as to any plea offer given. *See Goudie v. United States*, 323 F. Supp. 2d 1320, 1327 (S.D. Fla. 2004) ("It is clear that where the prosecution has proffered a plea agreement, a defense attorney must inform his client about the proposed plea agreement, and that failure to do so constitutes ineffective assistance of counsel.") (citing *Diaz v. United States*, 930 F.2d 832, 834–35 (11th Cir. 1991)).

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. *Strickland*, 466 U.S. at 697. The Eleventh

Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).  The burden of persuasion on the Movant is preponderance of the evidence.  *Id.*

Based on the evidence and testimony presented, the Court finds that Lewis has not met his burden.  The Court finds that AFPD Houlihan's testimony is credible.  He communicated the plea that was offered and the plea was rejected based on Lewis's position that he was not guilty.  The evidence before the Court, by way of the emails admitted into evidence, confirm that AFPD Houlihan communicated the plea in person and promptly communicated Lewis's rejection.  Indeed, Lewis admits that AFPD Houlihan relayed the Plea Offer to him at the conclusion of a meeting.  *See* ECF No. [32] at 10:18–11:2.  This statement is corroborated by letters sent by Lewis to Mr. Casuso during the pendency of the Criminal Case, inquiring about the status of the Plea Offer, and whether it was still viable once AFPD Houlihan withdrew from representation.  ECF No. [1-1] at 1–2.

To the extent that Lewis alleges that AFPD Houlihan failed to *adequately* convey the details of the Plea Offer to him, the Court finds that Lewis' testimony is not credible.  At the Evidentiary Hearing, Lewis testified that at the conclusion of a meeting on another topic, AFPD Houlihan "was pretty much leaning out the door" when he casually mentioned to Lewis that the Government had offered a ten-year plea offer.  *See* ECF No. [32] at 10:18–11:2.  Lewis testified that AFPD Houlihan mentioned only that Lewis would have to register as a sex offender, Lewis asked why he would have to register, and AFPD Houlihan responded "yeah, you're right," and left the meeting.  *Id.*  Lewis testified that his "interpretation was [AFPD Houlihan] was coming back," after that meeting, so Lewis did not contact him any further about the Plea Offer.  *Id.* at 37:10–15.

Specifically, Lewis testified that AFPD Houlihan "didn't let [him] know if it was a nonbinding, a binding plea. He didn't let [Lewis] know if he had to corroborate, didn't – he didn't let [Lewis] know if he had to waive [his] appeal rights. He didn't let [Lewis] know that the government – that the judge can actually use relevant conduct." *Id.* at 11:5–9. Had he known this information, Lewis testifies that he would have "absolutely" accepted the Plea Offer. *Id.* at 33:4–8.

On this point, the Court does not credit the testimony of Lewis. Indeed, Lewis's testimony is not consistent with the record evidence, including contemporaneous emails wherein AFPD Houlihan states that Lewis was not receptive to a plea and that he conveyed the Plea Offer to Lewis anyway. *See* ECF Nos. [24-1] at 1; [29] at 17. AFPD Houlihan testified that he recalled Lewis being "unreceptive to any sort of negotiations regarding a plea at any stage during the time that [AFPD Houlihan] represented him. He was very adamant about that." ECF No. [29] at 49:10–12. AFPD Houlihan also testified, importantly, that he recalled AUSA Viamontes first asking whether Lewis would be receptive to a ten-year plea at all, with the specific details to be discussed if and when that question was answered. *Id.* at 71:3–13. On this point, the undersigned credits the testimony of AFPD Houlihan. AFPD Houlihan's testimony is both believable and supported by the evidence in the record, including the contemporaneous emails sent to AUSA Viamontes and AFPD Carmon. *See* ECF Nos. [24-1] at 1; [29] at 17. Given the evidence in the record, AFPD Houlihan conveyed the Plea Offer that was proposed to Lewis, and Lewis did not accept that offer. His testimony now that the Plea Offer was not communicated and that if it had been he would have accepted is not only self-serving, but also not credible.

Additionally, Lewis has not established, and the Court does not find, that there were any specific details of the Plea Offer that AFPD Houlihan withheld from Lewis. It is not "clearly define[d] how much and what kind of information must be conveyed to a defendant in order to

satisfy the [first] prong of the *Strickland* standard." *Goudie*, 323 F. Supp. 2d at 1330.  Rather, the test hinges on whether the information conveyed was reasonable given the circumstances. *Strickland*, 466 U.S. at 688.  Lewis alleges that AFPD Houlihan failed to apprise him of whether the Plea Offer was "nonbinding, a binding plea," whether Lewis "had to corroborate," whether "relevant conduct" could be used in sentencing, and whether there would have been an appellate waiver.  ECF No. [32] at 11:5–9.   AFPD Houlihan, however, testified that not only was Lewis entirely unreceptive to the idea of a ten-year plea offer, but also there *were no* specific details yet to discuss, as the Plea Offer was only in initial discussion phases with AUSA Viamontes.  ECF No. [29] at 71:3–13.  On this point, the Court credits the testimony of AFPD Houlihan, and finds that he conveyed all relevant information available to him and did not fail to apprise Lewis of his rights.  Indeed, there is no dispute that AFPD Houlihan did apprise Lewis of his right to either accept a plea offer or proceed to trial, and the benefits and risks of each option.  ECF No. [32] at 11:13–25.  Moreover, the fact that the Plea Offer was a ten year offer was clearly conveyed and rejected, and as such, the other terms that Lewis now complains of were not at issue.  Thus, the Court finds that AFPD Houlihan did not render deficient performance in his conveyance of the Plea Offer to Lewis.

Lewis also contends that AFPD Houlihan failed to convey the Plea Offer to Mr. Casuso. ECF No. [1] at 1.  At the Evidentiary hearing, AFPD Houlihan testified that he did not have a specific recollection of telling Mr. Casuso about the Plea Offer, but he did meet with Mr. Casuso about the facts and discovery in the case.  *See* ECF No. [29] at 62:13–63:3.  Whether Mr. Casuso was apprised of the Plea Offer, however, is irrelevant as the Court credits the testimony of AUSA Viamontes that the Plea Offer was no longer viable after July 10, 2014, prior to Mr. Casusuo's appearance in the case.  *See id.* at 27:9–22.

Given that the Court finds that Lewis failed to establish the first prong of the *Strickland* test, it is not necessary to move to the second prong.  However, Lewis has also failed to meet his burden on the second prong.  Specifically, Lewis cannot show that AFPD Houlihan's failure to apprise him of specific details of the Plea Offer prejudiced him such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 687–88.  Lewis testified that had AFPD Houlihan adequately explained the terms of the Plea Offer, he "would have taken the 10 years because it's a better deal than going to trial."  ECF No. [32] at 44:2–7.  On this point, the Court does not credit Lewis's testimony.  With the benefit of hindsight and while now serving a term of imprisonment for more than 32 years, Lewis now posits the self-serving testimony that he would have accepted a lower term of imprisonment but for the failure of AFPD Houlihan.  However, the evidence showed that not only was Lewis still failing to admit responsibility after the trial, but he was also unwilling to accept a plea offer that included a ten year period of incarceration.  On this point, the Court credits the testimony of AFPD Houlihan and finds no objective evidence that would cause the Court to credit Lewis's statement.  *See Goudie*, 323 F. Supp. 2d at 1336 ("The Court finds that Petitioner has not offered any objective evidence that he would have accepted the misdemeanor plea offer if [counsel] had more thoroughly explained Petitioner's sentencing exposure upon conviction or if O'Donnell had advised Petitioner to accept the plea offer."); *Macli v. United States*, No. 16-cv-23544, 2018 WL 7141867, at *16 (S.D. Fla. Nov. 5, 2018) ("In conclusion, the court rejects [the defendant's] self-serving, disingenuous testimony that, but for counsel's alleges misadvice, the movant would have accepted a plea offer.  To the contrary, the Undersigned finds movant did not want to accept any plea offer from the government."), *report and recommendation adopted in relevant part*, No. 16-cv-23544, 2019 WL 369278 (S.D. Fla. Jan. 30, 2019).  AFPD

Houlihan testified that Lewis believed "he was innocent," that "he did not – that he did not force anybody to do anything," "he just felt that he was innocent." ECF No. [29] at 54:7–11. Because there is no indication in the record, apart from Lewis's self-serving testimony, that he was receptive to a plea offer at all, the Court finds that Lewis failed to show prejudice.

## V.    RECOMMENDATION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motion, ECF No. [1], be **DENIED**.

## VI.   OBJECTIONS

The parties will have **FOURTEEN (14)** calendar days from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge.  Any request for an extension of this deadline must be made within **SEVEN (7)** calendar days from the date of this Report and Recommendation. Pursuant to Fed. R. Crim. P. 59(b), Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 28, 2023.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**